J-A23025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF: Z.T., A MINOR

IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: M.T., BIOLOGICAL FATHER

No. 322 WDA 2014

Appeal from the Decree entered January 28, 2014,
in the Court of Common Pleas of Allegheny County,
Orphans' Court, at No(s): A-13-087

BEFORE:  DONOHUE, ALLEN, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED OCTOBER 07, 2014**

M.T. ("Father") appeals from the decree terminating his parental rights to his son, Z.T., born in September of 2002.  We affirm.[1]

On August 9, 2013, A.M. ("Mother") and her husband, J.M. ("Stepfather"), filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).  Attached to the involuntary termination petition is a consent of the adult intending to adopt, which was executed by Stepfather on June 19, 2013.  **See** Petition, 8/9/13, at Exhibit C.  The orphans' court held a hearing on the petition on January 17, 2014, during which the following witnesses testified:  Mother; Stepfather; Father; P.B., Father's friend; and C.H., Father's girlfriend.

---

[1] The Guardian *Ad Litem* ("GAL") also filed a brief in this matter, stating that the orphans' court "had abundant competent evidence to support its determination to terminate Father's rights and some of that evidence came from Father's own testimony and admissions."  GAL Brief at 9.  Further, the GAL states that "abundant competent evidence" exists to support the court's determination that terminating Father's parental rights will serve the needs and welfare of Z.T.  *Id.* at 19-20.

Because the parties are well acquainted with the details of this case, and the orphans' court has ably recounted the facts of record, we adopt them here. *See* Orphans' Court Opinion, 3/20/14, at 1-3.[2]

By decree dated January 28, 2014, the orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father presents the following issues for our review:

> I. Whether the [orphans'] court erred in finding that [Father] had, for a period of at least six (6) months preceding the filing of the petition for termination of parental rights, evidenced a settled purpose of relinquishing his parental claim to . . . [Z.T.], and/or had refused to perform his parental duties?
>
> II. Whether the [orphans'] court erred in finding that the termination of [Father's] parental rights best serve[d] the development[al], physical and emotional needs[] and welfare of [Z.T.]?

Father's Brief at 5.

We review the decree involuntarily terminating Father's parental rights according to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are

---

[2] The orphans' court opinion pursuant to Pa.R.A.P. 1925(a) is not paginated. Therefore, we have assigned each page a sequential number for ease of reference.

supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [___ Pa. ___, ___, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, [___ Pa. ___], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b):

determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S.A. § 2511). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1) and (b), which provide as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

- 4 -

23 Pa.C.S.A § 2511(a)(1), (b).

With respect to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). Further:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

This Court has emphasized that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted). We have explained:

> A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a

genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . [the child's] physical and emotional needs.

*Id.*

With respect to Section 2511(b), this Court has explained the requisite analysis as follows:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

With respect to Section 2511(a)(1), Father contends that he "was being prevented from seeing his son due to" Mother. Father's Brief at 13. Specifically, Father argues that Mother "had already filed two erroneous PFA's [Protection from Abuse petitions] against [Father] and there was a legitimate fear by [Father] that another PFA would be filed against him if he attempted to contact his son."[3] *Id.* In addition, in prior custody proceedings between the parties, Father and Mother were ordered by the trial court to contact a reunification counselor for the purpose of Father obtaining partial physical custody of Z.T. Father states that he never participated in reunification counseling because he "mistakenly left the issue of reunification counseling in the hands of his previous counsel [in the custody proceedings] and Mother's attorney. [Father's] previous counsel failed to do her job." *Id.* at 14.

With respect to Section 2511(b), Father acknowledges that Z.T. "is doing well in his current situation. . . ." Father's Brief at 15. Father also acknowledges that the bond between him and Z.T. is "miniscule." *Id.* However, Father contends that he "had a strong bond with his child until Mother did whatever was in her power to destroy that bond." *Id.* Father

---

[3] Mother testified that the court issued two separate PFA orders against Father after their marital separation. N.T., 1/17/14, at 18. Father testified that the second PFA order was issued against him on June 29, 2011. *Id.* at 92. Father acknowledged on cross-examination by Mother's counsel that he did not see Z.T. during the entire year of 2011, even though the aforesaid PFA order expired after only four months. *Id.* at 94. Notably, in his testimony, Father failed to acknowledge that his conduct resulted in the PFA orders issued against him.

further claims that he has not gained a strong bond with Z.T. because of failures by his counsel in the custody proceedings.

Upon careful review, we conclude the testimonial evidence supports the decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). We therefore discern no abuse of discretion by the orphans' court. Furthermore, we adopt as dispositive of Father's issues on appeal the orphans' court's opinion pursuant to Pa.R.A.P. 1925(a). **See** Trial Court Opinion, 3/20/14. The parties are directed to attach a copy of the Rule 1925(a) opinion in the event of further proceedings.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014